[Civ. No. 9696. First Appellate District, Division Two.—April 24, 1935.]

THOMAS E. FURZE, Appellant, v. ROBERT H. WRIGHT, Respondent.

Philander B. Beadle for Appellant.

L. R. Weinmann and Weinmann, Quayle & Berry for Respondent.

STURTEVANT, J.—The plaintiff and the defendant while driving their automobiles met with a collision at the intersection of California Street and Alcatraz Avenue in Berkeley. For injuries sustained in the accident the plaintiff commenced this action. The jury returned a verdict in favor of the defendant. The plaintiff made a motion for a new trial but his motion was denied. From the judgment entered in favor of the defendant the plaintiff appealed and has brought up a bill of exceptions.

The plaintiff contends that the trial court abused its discretion in denying the plaintiff's motion for a new trial upon the ground of newly discovered evidence. This contention he divides into several different arguments. The defendant replies that the ruling of the trial court may not be disturbed on appeal except that the trial court did abuse its discretion and that an abuse of discretion is never pre-

sumed but must be shown by the record. (*Wilder* v. *Wilder*, 214 Cal. 783, 785 [7 Pac. (2d) 1032]; *Olson* v. *Ranker*, 93 Cal. App. 124, 126 [269 Pac. 175].) Continuing the defendant claims the trial court did not abuse its discretion for several different reasons which he proceeds to set forth. If any one of those several reasons is sound the order must be affirmed and it is not necessary that every reason assigned by the defendant should be discussed.

■ The first reason assigned by the defendant is that the order was properly denied because the plaintiff did not make a sufficient showing that he had used reasonable diligence to discover the evidence which, on his motion for a new trial, he claimed to be newly discovered evidence. An understanding of that point requires a brief statement of facts.

The accident occurred on the sixth day of January, 1934, at about 11:20 A. M. The complaint was filed February 16th, a little over one month thereafter. On the 17th of May the trial commenced in the city of Oakland and continued during the three days following. The record discloses that the intersection in which the accident occurred is located in closely built up territory. On the southwest corner of the intersection stands a building that is occupied in part as a bakery. A glass door is set in diagonally at the street corner. There are windows on the side adjacent to Alcatraz Avenue. The bakery is conducted by the Kulik family. On the trial the plaintiff called as witnesses Herman Kulik, Henry Corke, H. C. Spite and Henry Rogers. Each lived in the immediate neighborhood and, excepting Herman Kulik, went to the scene immediately after the accident happened. Herman Kulik testified that at the time of the accident he was on the sidewalk outside of the bakery with his back turned to the street washing the window of the bakery. He did not see the cars until he heard the crash and then looked around. In the very nature of his work Kulik was looking through the glass and into the bakery. No witness was asked to name any person that he saw at the scene of the accident. Kulik was not asked to name who was in the bakery as he stood looking through the windows. No deposition of any witness or party was taken but both the plaintiff and the defendant relied on the examinations made and the reports received from their respective investigators.

The alleged newly discovered evidence consisted of the claim that Hattie Kulik and Lucella Cummins were eye-witnesses to the accident; that they were in the bakery looking out; that Mrs. Kulik was looking through the glass door and directly at the intersection; and that Miss Cummins was looking north through the window which Herman was washing. Both women were interviewed by the agents of the plaintiff and also by the agents of the defendant before the trial. To all of those agents both women stated they were in a back room and did not see the accident. Neither was called as a witness by either party. In support of the judgment we must assume the trial court held that the plaintiff did not show he had exercised due diligence in preparing his case. If the trial court did so hold we cannot say that such holding was, under the facts, an abuse of discretion. To so hold is to lay a foundation for the same · claim to be made in every automobile collision case and all similar controversies—civil or criminal.

█ The defendant also asserts that the showing made by the plaintiff was such that the trial court may have held, and should have held, that the testimony of Mrs. Kulik and Miss Cummins as shown in the affidavits was incredible. In addition to the facts above stated it should be noted that on the evening of the day the jury returned a verdict both Mrs. Kulik and Miss Cummins notified the plaintiff that they witnessed the accident and on a new trial would appear as witnesses. At that time the plaintiff had testified. In giving his testimony, among other things he testified as follows: ''I was driving south on California street. The other car involved was an Auburn cabriolet driven by the defendant. It was traveling toward the east on Alcatraz avenue. In the block north of Alcatraz my speed was approximately 15 or 20 miles per hour. . . . As I approached Alcatraz avenue I slowed down. . . . When my front wheels were about at the north property line I saw the Auburn for the first time. It was about 40 to 50 yards to my right. . . . I continued through the intersection. My left wheels were about one foot east of the westerly south bound rail as I passed through the intersection. My speed through the intersection was about 10 to 12 miles per hour. . . . When my front wheels were about 5 feet south of the

middle line of Alcatraz I could observe the approximate speed of the Auburn for the first time. It was traveling about 45 miles per hour. It was in the middle of Alcatraz avenue. It was coming straight toward me. The front end of my car was in the path of the Auburn at that time. The front of the Auburn was then about 30 feet toward my right. . . . The Auburn did not swerve before the accident. I did not swerve my car to either the right or the left. . . . The front of the Auburn hit the right side of my car. It hit my car at about the middle.'' The defendant Wright testified: ''In approaching California street from the west on Alcatraz avenue I was traveling at a speed of approximately 25 miles per hour. As I approached the intersection I was compelled to assume the course within a foot or two of the center line of Alcatraz because of a car parked along the southerly curb line of Alcatraz avenue west of California street. As I continued to approach the intersection I reduced my speed and entered the intersection at a rate not greater than 12 to 15 miles per hour. . . . When I was approximately 30 feet from the intersection plaintiff was approximately 100 feet therefrom. . . . I entered the intersection well in advance of the plaintiff. When the front of my automobile had reached the westerly car rail of the south bound car tracks I again noticed the plaintiff's automobile. At that time it was about 10 feet north of the northerly curb line of Alcatraz avenue. I observed that it was traveling at a speed of 40 to 45 miles per hour and was not slowing up. . . . I immediately applied my brakes. . . . Plaintiff continued into the intersection and swerved sharply to his left to cut in front of me. . . . Plaintiff's automobile crashed against the left front corner of mine and dragged my automobile in a southeasterly direction. As soon as the plaintiff's automobile released the load of my car it turned over on its side. I was barely moving at the time of the impact. At the time of the impact I was headed directly east and was not angled to either my right or left.'' The defendant and other witnesses testified to ''skid'' marks and ''scuff'' marks on the street. Several witnesses testified to hearing two distinct reports. A. L. Bowlsby, the mechanic who repaired the plaintiff's car testified that the front end of the chassis was bent six inches to the left. In

her affidavit Mrs. Kulik averred that she was looking through the glass door of the bakery diagonally across the intersection of California and Alcatraz. Miss Cummins averred that she was looking north through the glass window across Alcatraz Avenue. Thus the two affiants covered the entire case—Mrs. Kulik the movements of the plaintiff, and Miss Cummins the movements of the defendant. Both together stated a set of facts that completely and meticulously covered and corroborated every fact testified to by the plaintiff. Certain marks on the ground, positions of the cars after the accident was over, and indentations of the cars, squared with the testimony of the defendant and not with the testimony given by the plaintiff. If, as testified by the plaintiff, the defendant's car hit the plaintiff's car on the right door the plaintiff's chassis might have been bent but it would have bent to the right and not to the left. On the other hand if plaintiff's car hit defendant's car a slanting blow on the left front corner, interlocked with that car, and while the brakes of the latter were set dragged it toward the southeast, such forces might bend the chassis of the plaintiff's car as described above and might cause all of the "skid" marks and "scuff" marks described by the witnesses. If, under these circumstances, the trial court held the affidavits incredible it was not an abuse of discretion.

 Finally, the defendant contends that the newly discovered evidence was " . . . simply cumulative or designed to contradict the witness" Wright and was not sufficient to support a motion for a new trial. (*People* v. *Anthony,* 56 Cal. 397, 399.) That contention is sound. In the case of *People* v. *Granillo,* 140 Cal. App. 707, at page 719 [36 Pac. (2d) 206], the court said: "It is clear that the testimony of these two affiants, if admitted, would have been contradictory of that of Mrs. Loya and Willie Loya, and cumulative as to that of Mrs. Granillo and Henry Varella. Evidence which is designed to contradict a witness or is merely cumulative is not justification of a new trial. (*People* v. *Anthony,* 56 Cal. 397; *People* v. *Weber,* 149 Cal. 325 [86 Pac. 671]; *People* v. *Loveless,* 140 Cal. App. 291 [35 Pac. (2d) 574].)" But the plaintiff contends when, as here, the conflict in the testimony given by the immediate parties is extremely marked, then the evidence of disinter-

ested witnesses is desirable and therefore their evidence is not cumulative. He cites and relies on *State* v. *Evans,* 98 Or. 214 [192 Pac. 1062, 193 Pac. 927]; *Sluman* v. *Dolan,* 24 S. D. 32 [123 N. W. 72], *State* v. *Wiley,* 106 S. C. 437 [91 S. E. 382], *Webster* v. *Ek,* 62 N. D. 44 [241 N. W. 503]; and *Houston etc. Ry. Co.* v. *Forsyth,* 49 Tex. 171. That in this state in making its ruling on a motion for a new trial the trial court should have considered the distinction to which the plaintiff points, will be freely conceded. There is nothing in the record showing that it did not do so. But if after doing so in the instant case the trial court ruled against the offer we think it may not properly be said that such ruling was therefore an abuse of discretion. In any contested case the respective witnesses purport to state the facts as they saw and heard them. To carry the contention of the plaintiff out to its full length would be to impose on the trial court the duty of ascertaining whether the witnesses to produce the newly discovered evidence were more disinterested, saw with better eyes or from a better viewpoint, or heard from a better position or with better ears. But such is not the rule defined by the courts of this state. Evidence solely tending to contradict a witness who testified at the trial falls within the rule (*People* v. *Weber,* 149 Cal. 325, 350 [86 Pac. 671]; *Rath* v. *Bankston,* 101 Cal. App. 274, 288 [281 Pac. 1081]); evidence to be given along the same general lines testified to by witnesses who testified at the trial, also falls within the rule (*Patterson* v. *San Francisco etc. Ry. Co.,* 147 Cal. 178, 186 [81 Pac. 531]; *Proctor* v. *Smith,* 214 Cal. 227, 234 [4 Pac. (2d) 773]). If a litigant desires that his case should be presented on the best and soundest evidence to be had, he should see to that before going to trial and during the trial. A failure to do so is not, standing alone, grounds on which to base a motion for a new trial.

In the defendant's brief the point was made that the record does not show that the plaintiff served and filed a notice of intention to move for a new trial. In response the plaintiff served and filed a motion to augment the record. While the original record is not a model we think it may not be said it is insufficient to present the points made by the plain-

tiff and we have treated it accordingly. Therefore the motion to augment is denied.

For the reasons hereinabove stated the judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 24, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 20, 1935.